**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

BIG TOMATO LLC
d/b/a TABELLA                                                                                  PLAINTIFF

v.                                                              CASE NO.: 2:20-cv-86-KS-MTP

STATE AUTO PROPERTY AND
CASUALTY INSURANCE CO.                                                          DEFENDANT

**CLASS ACTION COMPLAINT**

Plaintiff Big Tomato LLC, d/b/a Tabella, on behalf of itself and all others similarly situated, brings this action against State Auto Property and Casualty Insurance Co. for a declaratory judgment of rights and obligations under contracts of insurance and over State Auto's anticipated breach of insurance policies by denial of business interruption and extra expense coverage, and additional coverages, for Plaintiff and similarly situated all-risk commercial property insurance policyholders who have suffered enormous business income losses and related covered expenses resulting from civil authority orders putting in place measures to stop the spread of the deadly COVID-19 outbreak, and states:

**I.   INTRODUCTION**

1.  On March 11, 2020, the World Health Organization Director General Tedros Adhanom Ghebreysus declared the COVID-19 outbreak a worldwide pandemic, stating: "WHO has been assessing this outbreak around the clock and we are deeply concerned with the alarming levels of spread and severity, and by the alarming levels of inaction. We have therefore made the assessment that COVID-19 can be characterized as a pandemic."[1]

---

[1] https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

1

2. On March 16, 2020, President Trump, the Centers for Disease Control and Prevention, and member of the national Coronavirus Task Force issued to the American public guidance, styled as "30 Days to Slow the Spread" for stopping the spread of COVID-19. This guidance advised individuals to adopt far-reaching social distancing measures, such as working from home, avoiding shopping trips and gatherings of more than 10 people, and staying away from restaurants, bars and food courts.[2]

3. Following this advice for individuals to adopt far-reaching social distancing measures, many local and state government administrations across the nation recognized the need to take measures to protect the health and safety of their residents from the person to person and surface to person spread of COVID-19. As a result, many governmental entities entered civil authority orders suspending, severely curtailing business operations of non-essential businesses that interact with the public and provide gathering places for individuals. Currently, almost all states within the United States have issued some sort of "stay-at-home" order and ordered private non-essential business operations to close.

4. The result of these far-reaching restrictions and prohibitions has been catastrophic for most non-essential businesses, especially restaurants and other food service businesses, as well as retail establishments, entertainment venues, and other small, medium and large businesses which have been forced to close, furlough employees, and endure a sudden loss of cash flow that threatens their survival.

5. Most businesses insure against such catastrophic events like the current COVID-19 pandemic through all-risk commercial property insurance policies. These policies promise to indemnify the policyholder for actual business losses incurred when business operations are

---

[2] CDC. *The President's Coronavirus Guidelines For America* (2020), *Available at* https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf.

involuntarily suspended, interrupted, curtailed, when access to the premises is prohibited because of direct physical loss or damage to the property or by a civil authority order that restricts or prohibits access to the property. This coverage is commonly known as "business interruption coverage" and is standard in most all-risk commercial property insurance policies.

6. State Auto, as most insurance companies which have issued all-risk commercial property insurance policies with business interruption coverage, are denying the obligation to pay for business income losses and other covered expenses incurred by policyholders for the physical loss and damage to the insured property from measures put in place by the civil authorities to stop the spread of COVID-19 among the population. This action seeks declaratory judgment that affirms that the COVID-19 pandemic and the corresponding response by civil authorities to stop the spread of the outbreak triggers coverage, has caused physical property loss and damage to the insured property, provides coverage for future civil authority orders that result in future suspensions or curtailments of business operations, and finds that State Auto is liable for the losses suffered by policyholders.

7. In addition, this action brings a claim against State Auto for its anticipatory breach of its contractual obligation under common all-risk commercial property insurance policies to indemnify Plaintiff and others similarly situated for business losses and extra expenses, and other related losses resulting from actions taken by civil authorities to stop the human to human and surface to human spread of the COVID-19 outbreak.

8. Plaintiff brings this action on behalf of a proposed class of policyholders who paid premiums in exchange for all-risk commercial property insurance policy that included lost business income and extra expense coverage.

II. JURISDICTION AND VENUE

3

9. This is an action asserting class action claims for declaratory relief and damages from the anticipatory breach of insurance policies issued by State Auto. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory judgment under these statutes and pursuant to Federal Rule of Civil Procedure 57.

10. This Court also has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA") (codified in 28 U.S.C. §§ 1332, 1453, 1711-1715). Diversity exists among the Plaintiff and Defendant, there are more than one hundred members of the putative Class, and the amount in controversy exceeds $5 million. 28 U.S.C. §1332(d)(2). In determining whether the $5 million amount in controversy requirement of 28 U.S.C. §1332(d)(2) is met, the claims of the putative Class members are aggregated. 28 U.S.C. § 1332(d)(6).

11. This Court also has supplemental jurisdiction over state law claims pursuant to U.S.C. § 1367 (a) because all claims alleged herein form part of the same case or controversy.

12. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred here, and State Auto transacts business, engaged in misconduct, or may be found in this District. State Auto is authorized to sell property insurance in the State of Mississippi an, and is engaged in the insurance business in the State of Mississippi.

## III.   THE PARTIES

13. Plaintiff Big Tomato LLC d/b/a Tabella, is a Mississippi corporation authorized to do business and doing business at 3720 Hardy Street, Hattiesburg, Mississippi.

14. State Auto is a corporation organized under the laws of the State of Ohio with its principal place of business in Columbus, Ohio.

15. This Court has personal jurisdiction, both general and specific, over State Auto.

IV.     **FACTUAL ALLEGATIONS**

   A.     <u>**The Global COVID-19 Pandemic**</u>

   16.     Coronaviruses are a type of virus that often cause respiratory diseases in humans. In the fall of 2019, a new mutation of coronavirus was detected in China and thought to have originated in a "wet market" in Wuhan, China that sells exotic animals for food consumption.

   17.     The new virus variation has biological similarities to a coronavirus known as Severe Acute Respiratory Syndrome, and more commonly referred to by the acronym SARS. The World Health Organization has named the new virus SARS-CoV-2, and it has more commonly become known as COVID-19, short for Coronavirus Disease-2019.

   18.     Within months of COVID-19 being identified and named, the virus quickly spread from China to other parts of the world, including the United States. On March 11, 2020, World Health Organization Director General Tedros Adhanom Ghebreyesus declared the COVID-19 outbreak a worldwide epidemic of a virus for which humans have no natural immunity. In other words, a pandemic.

   19.     Vaccines are prophylactic treatments that protect against particular viruses. Unlike influenza, there is no vaccine or other preventive substance to stimulate the production of antibodies in humans to provide immunity against COVID-19. To date, it has been reported that more than 185,000 people have died worldwide. In the United States alone, over 48,000 have died, and over 850,000 people are confirmed infected with the virus. These numbers are expected to grow exponentially and have taxed the United States' health care delivery system to near collapse with an overflow of critically ill patients and a scarcity of ventilators for patients and personal protective equipment for health care providers.

   20.     Without a vaccine to protect against COVID-19, effective control of the outbreak relies on measures designed to reduce human to human and surface to human exposure. Recent

information on the CDC's website provides that COVID-19 spreads when people are within 6-feet of each other or when a person comes in contact with a surface or object that has the virus on it. Various other sources state that close contact with a person with the virus or surfaces and the potential for the virus to be circulated by air conditioning systems within restaurants and other establishments where the virus is found, can transmit the virus.

21. The secondary exposure of surface to humans is particularly acute in places the public normally gathers to socialize, eat, drink, shop, be entertained, and go for recreation. This is why the CDC recommends that, in viral outbreaks individuals who are infected stay at home and those who are not sick engage in preventative measures such as constant hand washing and avoiding activities that would bring them into close proximity of people with the virus or surfaces where the virus may reside. However, because these recommendations have proven ineffective to minimize the spread of COVID-19, containment efforts have resulted in civil authorities issuing orders closing non-essential business establishments, including restaurants, bars, hotels, theaters, personal care salons, gyms, and schools, and mandating social distancing among the population. This has caused the cancelation of sporting events, parades, and concerts, the closure of amusement parks, and substantial travel restrictions. In addition, to conserve medical supplies, orders have been issued prohibiting the performance of non-urgent or non-emergency elective procedures and surgeries forcing the suspension of operations at many medical, surgical, therapeutic, and dental practices.

22. Every state in the nation has declared a state of emergency due to the existence of COVID-19 with many states and local governments issuing restrictive emergency orders.

B. **State Auto's Standard Uniform All-Risk Commercial Property Insurance Policies**

23. State Auto's policies issued to Plaintiff and the Class Members are "all risk" commercial property polices which cover loss or damage to the covered premises resulting from all risks other than those expressly excluded.

24. State Auto uses standard, uniform insurance policies issued by the Insurance Services Office (ISO), an insurance advisory organization that provides statistical and actuarial information to businesses and provides ISO commercial property forms for commercial property insurance policies.

25. These commercial property forms include a standard policy form titled "Businessowners Special Property Coverage Form."

26. Under the "Coverage" provision of the insurance policy at issue in this case, business income is defined as:

> (1) Net income (Net Profit or Loss before income taxes) that would have been earned or incurred; and (2) Continuing normal operating expenses incurred, including payroll.

27. The standard provision further states that State Auto will:

> [P]ay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations.

28. The provision for "Additional Coverages" provides that State Auto will:

> [P]ay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration,

29. The provision for "Additional Coverage Civil Authority" provides that State Auto will:

> [P]ay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises . . .

30. State Auto's policy is an insurance policy which covers all risks unless clearly and specifically excluded. State Auto's policy provides that covered causes of loss means direct physical loss unless the loss is specifically excluded in the policy. Plaintiff and all similarly situated Class Members have suffered a direct physical loss of and damage to their property due to the presence of the virus and due to the suspension of their operations from the global COVID-19 pandemic and the civil authorities' measures to stop the human to human and surface to human transmission of COVID-19. The virus physically impacts public and private property, and physical spaces in establishments around the world. The virus physically infects and stays on the surface of objects or materials, "fomites," for weeks. The policy does not provide any exclusion due to losses, business or property, from a virus or global pandemic.

    C.    **<u>Plaintiff's Factual Allegations</u>**

31. On January 19, 2020, State Auto issued a standard ISO all-risk commercial property insurance policy to Plaintiff under which Plaintiff agreed to make premium payments in exchange for State Auto's promise to indemnify Plaintiff for losses including but not limited to business income losses at the insured properties.

32. The insured property is defined in the policy but is generally described as a restaurant located in Mississippi: Tabella restaurant located at 3720 Hardy St., Hattiesburg, MS 39402. The policy, like all Class Members' policies, is an all-risk common policy that provides covered causes of loss for physical loss and physical damage unless expressly excluded.

33. The policy provides coverage between the periods of January 19, 2020, and January 19, 2021, and is in full effect as Plaintiff has faithfully paid the premium due which State Auto has accepted.

34. Plaintiff has paid the policy premium to the State Auto specifically to provide coverages for coverage of lost business income and extra expenses in the event of an involuntary business interruption.

35. On March 18, 2020, Hattiesburg Mayor Toby Barker issued an executive order restricting operating times for all restaurants within Hattiesburg. On March 21, 2020, Mayor Barker issued another executive order closing all dine-in services at Hattiesburg restaurants.

36. On March 24, 2020, Governor Tate Reeves issued Executive Order 1463 further restricting restaurant operations in the State of Mississippi by suspending all dine-in services. These closings remain in effect.

37. Other similar orders have been issued that close or restrict all non-essential business operations or prohibit public access to the property of non-essential businesses.

38. The civil authority orders expressly state that the closing of non-essential businesses are necessary measures to protect the health and safety of all residents by stopping the spread of the virus through human to human and surface to human contact.

39. As a direct result of the governmental orders and the COVID-19 pandemic, Plaintiff has been forced to close its premises, suspend business operations, and furlough employees.

40. Plaintiff has faithfully paid the premiums and State Auto has accepted payment and as such is obligated to honor its contractual duty to provide coverage for the business losses and extra expenses and other expenses suffered. State Auto has denied Plaintiff's claims, contending that the business interruption losses of Plaintiff due to the COVID-19 pandemic are not covered under its form policy.

41.     Upon information and belief, State Auto has received and taken the policy premiums but has no intention of providing any coverage under the policies due to any business income losses or expenses incurred by policyholders related to the COVID-19 pandemic.

**D.     The COVID-19 Pandemic has Affected Policyholders Nationwide.**

42.     COVID-19 is physically impacting private commercial property in the Hattiesburg area, the State of Mississippi and throughout the United States, and threatening the very survival of thousands of restaurants, retail establishments and other businesses that have had their business operations suspended or curtailed by order of civil authorities.

43.     All but six states have enacted "stay-at-home" orders, thirty-five states have closed all non-essential businesses with other states enacting measures to curtail business operations.

44.     All fifty states have closed schools, and all but one state has closed restaurants and bars for services other than take-out and delivery.

45.     Upon information and belief, State Auto has received and taken the policy premiums from all class policyholders but have no intention of providing any coverage or indemnification under the policies if the business income losses and expenses are related to the COVID-19 pandemic.

46.     For example, a bipartisan group from the U.S. House of Representatives recently sent a letter to various insurance industry trade groups requesting that their members recognize financial losses relating to COVID-19 under the standard commercial interruption coverage. In response, the industry trade groups stated: "Business interruption policies do not, and were not designed to, provide coverage against communicable diseases such as COVID-19."7 Upon information and belief, the Underwriter Defendants belong and support the trade groups' position.

47.     In addition, many state departments of insurance have issued advisories to business owners that COVID-19 is not an insured peril and there will be no coverage for business

interruption. This is disinformation being published to discourage business owners from filing claims.

48. For instance, Arkansas Insurance Department Bulletin No. 9-2020 states that "In most BII policies, coverage is triggered when the policyholder sustains physical damage to insured property caused by a covered peril resulting in quantifiable business interruption loss . . .viruses and disease are typically NOT an insured peril unless added by endorsement. (emphasis in the original).

49. The South Carolina Department of Insurance issues "Guidance" on business interruption insurance stating that under the business income policy, there likely is no coverage from losses occurring as a result of a virus.

50. The insurance industry also has been actively advising Insurance Commissioners that they do not intend to provide coverage for business interruption related to COVID-19. As a result, many small businesses that maintain commercial multi-peril insurance policies with business interruption coverage will have large uninsured losses because the insurance industry is stating that such policies do not cover COVID-19.

51. For instance, the State of Connecticut Insurance Department, Maryland Insurance Administration and the West Virginia Office of the Insurance Commissioner issued nearly identical notices supporting the insurance companies' reasons for denying business interruption claims stating that the potential loss costs from such perils [like COVID-19] are so extreme that providing coverage would jeopardize the financial solvency of property insurers.

52. John F. King, Insurance and Safety Fire Commission for the State of Georgia issued Bulletin 20-EX-3 stating that losses from COVID-19 are excluded losses. Vicki Schmidt, Kansas

53. Insurance Department Commission issued a similar Bulletin stating it was her "understanding it is unlikely that a business policy would cover losses related to COVID-19."

54. Other state governments anticipate that insurance companies will breach their obligation to provide coverage for business losses due to the COVID-19 pandemic and have introduced bills requiring every insurance policy insuring against loss or damage to property, which includes the loss of use and occupancy and business interruption, be construed to include, among other covered perils, coverage for business interruption due to global virus transmission or pandemic.

55. A declaratory judgment determining that the business income loss and extra expense coverage provided in common all-risk commercial property insurance policies applies to the suspension, curtailment, and interruption of business operations resulting from measures put into place by civil authorities is necessary to prevent the Plaintiff and similarly situated Class members from being denied critical coverage for which they have paid.

## V. CLASS ACTION ALLEGATIONS

56. Plaintiff brings this lawsuit pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other persons similarly situated Procedure 23(a) and (b)(3).

The Nationwide Class is defined as:

> All entities who have entered into standard all-risk commercial property insurance policies with State Auto, where such policies provide for business income loss and extra expense coverage and do not exclude coverage for pandemics, and who have suffered losses due to measures put in place by civil authorities to stop the spread of COVID-19.

57. Excluded from each class are State Auto, its employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies;

Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

58. Plaintiff reserves the right to modify, expand, or amend the definitions of the proposed classes following the discovery period and before the Court determines whether class certification is appropriate.

59. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of its claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

### A. **Numerosity**

60. This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). The Class numbers at least in the thousands and consists of geographically dispersed business entities who are insured for business interruption losses. State Auto sells a large number of insurance policies in the state of Mississippi and in 32 other states and therefore joinder of the Class members is impracticable.

61. The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in State Auto's or its agent's books and records. Plaintiff anticipates providing appropriate notice to the certified Class in compliance with Fed. R. Civ. P. 23(c)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

### B. **Typicality**

62. This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiff's claims are typical of the claims of each of the Class members, as all Class members were and are similarly affected and their claims arise from the same all-risk commercial property insurance policy provisions entered into with State Auto. Each Class member's insurance policy contains the

same ISO-issued form providing coverage for business income loss. None of the forms exclude coverage due to a global pandemic. As such, a declaratory judgment as to the rights and obligations under Plaintiff's policies will address the rights and obligations of all Class members.

### C.     Adequacy of Representation

63.     Plaintiff is committed to prosecuting the action, will fairly and adequately protect the interests of the members of the Class, and have retained counsel competent and experienced in class action litigation, including litigation relating to insurance policies. Plaintiff has no interests antagonistic to or in conflict with other members of the Class. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

### D.     Commonality

64.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) because there are questions of law and fact that are common to each of the classes. These common questions predominate over any questions affecting only individual Class members. The questions of law and fact common to the Class include, but are not limited to:

   a. Whether there is an actual controversy between Plaintiff and State Auto as to the rights, duties, responsibilities and obligations of the parties under the business interruption coverage provisions contained in standard all- risk commercial property insurance policies;

   b. Whether the COVID-19 pandemic is a covered loss under Plaintiff's and the Class members standard all-risk commercial property insurance policies;

   c. Whether the COVID-19 pandemic is excluded from Plaintiff's and the Class members standard all-risk commercial property insurance policies;

   d. Whether the presence of COVID-19 and/or the measures put in place by civil authorities to stop the spread of COVID-19 caused physical loss or damage to covered commercial property;

   e. Whether State Auto has breached repudiated and anticipatorily breached the all-risk commercial property insurance policies the issued with business interruption coverage by intending to deny claims for coverage; and

   f. Whether Plaintiff and the Class members suffered damages as a result of the anticipatory breach by State Auto.

### E.     Superiority/Predominance

65.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of the rights of the Class members. The joinder of individual Class members is impracticable because of the vast number of Class members who have entered into the standard all-risk commercial property insurance policies with State Auto.

66.     Because a declaratory judgment as to the rights and obligations under the uniform all-risk commercial property insurance policies will apply to all Class members, most or all Class Members would have no rational economic interest in individually controlling the prosecution of specific actions. The burden imposed on the judicial system by individual litigation, and to State Auto, by even a small fraction of the Class members, would be enormous.

67.     In comparison to piecemeal litigation, class action litigation presents far fewer management difficulties, far better conserves the resources of both the judiciary and the parties, and far more effectively protects the rights of each Class member. The benefits to the legitimate interests of the parties, the court, and the public resulting from class action litigation substantially outweigh the expenses, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation. Class adjudication is simply superior to other alternatives under Fed. R. Civ. P. 23(b)(3)(D). Class treatment will also avoid the substantial risk of inconsistent factual and legal determinations on the many issues in this lawsuit.

68.     Plaintiff is unaware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with the authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiff or on its own determination, certify nationwide and statewide classes for claims sharing common legal questions; utilize the

provisions of Fed. R. Civ. P. 23(c)(4) to certify particular claims, issues, or common questions of law or of fact for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Fed. R. Civ. P. 23(c)(5) to divide any Class into subclasses.

## VI.     CLAIMS

### COUNT I
### DECLARATORY JUDGMENT, 28 U.S.C. §§ 2201 and 2202
### On behalf of the Plaintiffs and the Class Members

69.     Plaintiff incorporates by reference paragraphs 1 – 68 as though fully set forth herein.

70.     Under 28 U.S.C. §§ 2201 and 2202, this Court may declare the rights and other legal relations of the parties in dispute whether or not further relief is or could be sought.

71.     An actual and bona-fide controversy exists between the Plaintiff, the Class members and State Auto as to the rights and obligations under the policy coverage for business income loss in that:

   a. Plaintiff and the Class members were forced to close their premises or substantially reduce their business due to the presence of COVID-19 and/or measures put in place by civil authorities to stop the spread of COVID-19, specifically through human to human and surface to human contact;

   b. Plaintiff contends that the presence of COVID-19 and/or these measures trigger coverage under the standard all-risk commercial property insurance policy because the policy does not include an exclusion for a viral pandemic;

   c. Plaintiff further contends that the orders from civil authorities to close their premises triggers the "additional coverage" from that same form; and

   d. Upon information and belief, State Auto denies and disputes that the standard business income loss and extra expense coverage policy provides coverage in this instance.

72.     Plaintiff seeks a Declaratory Judgment on behalf of itself and all Class members that the standard all-risk commercial property insurance policy provides coverage for business

income losses and extra expenses and that policy does not contain an exclusion for a viral pandemic.

73. Plaintiff also seeks a Declaratory Judgment on behalf of itself and all Class members that the forced closures of its premises due to orders from state or local civil authorities is a prohibition of access to their premises and covered as defined in the insurance policies.

74. Federal Rule of Procedure 57 permits the Court to determine the existence or non-existence of any right, duty, power, liability, privilege, or of any fact upon which the parties' legal relations depend.

75. The declaration sought with regard to the instant controversy is of a justiciable nature, does not amount to an advisory decree, and will settle the controversy between the parties and on behalf of all Class members because of the uniform nature of State Auto's insurance policies.

**WHEREFORE** Plaintiff requests that this Court enter a Declaratory Judgment declaring that the standard all-risk commercial property insurance policy provides coverage for business income losses and extra expense losses incurred due to the measures taken by civil authorities to present the spread of COVID-19.

## COUNT II
## BREACH OF CONTRACT AND ANTICIPATORY BREACH OF CONTRACT

76. Plaintiff incorporates by reference paragraphs 1 –75 as though fully set forth herein.

77. Plaintiff and each Class member have standard all-risk commercial property insurance policies issued by State Auto.

78. Plaintiff and all similarly situated Class members have performed all their obligations as specified by the policy including the payment of all premiums due.

79. Plaintiff's and the Class members' insurance policies all contain standard forms that provide coverage for losses to business income and for "extra expenses."

80. The policies provide that State Auto will pay for the actual loss of business income due the "suspension" of "operations."

81. The policies also provide that State Auto will pay for any necessary expenses that Plaintiff and the Class members incur that they would not have incurred had there been no physical loss of their property.

82. Plaintiff's and the Class members' standard all-risk commercial property insurance policies further provide coverage for suspension of business operations due to closures caused by the action of civil authorities.

83. As stated above, Plaintiff and Class members were forced to close their premises to the public and cease or substantially reduce their operations due to the measures put in place by civil authorities to stop the spread of COVID-19 through human to human and surface to human transmission.

84. State Auto has breached its contractual duties to Plaintiff and the Class members by failing and refusing to pay benefits owed under its insurance policies.

85. Upon information and belief, State Auto intends to refuse performance under all of the insurance policies of the Class members. Specifically, State Auto intends to deny or refuse to provide coverage for business income losses or extra expenses incurred due to the measures put in place by civil authorities to stop the spread of COVID-19.

86. As a result of State Auto's breach and repudiation or anticipatory breach of the insurance policies, Plaintiff and the Class members have suffered actual damages.

**WHEREFORE**, Plaintiff, on behalf of themselves and all similarly situated Class members seek compensatory damages resulting from State Auto's breach, repudiation or anticipatory breach of contract and further seek all relief deemed appropriate by this Court, including attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of itself and all similarly situated individuals, demands judgment against State Auto as follows:

(1) Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiffs and their counsel to be representatives of the Class;

(2) Issuing a Declaratory Judgment declaring the Parties' rights and obligations under the insurance policies;

(3) Awarding Plaintiff and the Class compensatory damages from State Auto's breach and anticipatory breach of the insurance policies in an amount to be determined at trial, together with appropriate prejudgment interest at the maximum rate allowable by law;

(4) Awarding Plaintiff and the Class costs and disbursements and reasonable allowances for the fees of Plaintiff's and the Class's counsel and experts, and reimbursement of expenses; and

(5) Awarding such other and further relief the Court deems just, proper, and equitable.

## DEMAND FOR A JURY TRIAL

Plaintiff and the Class request a jury trial for any and all Counts for which a trial by jury is permitted by law.

Respectfully submitted this the 8th day of May 2020.

By: /s/ *Don Barrett*
John "Don" Barrett (MSB #2063)
David McMullan, Jr. (MSB #8494)
BARRETT LAW GROUP, P.A.
404 Court Square
Lexington, Mississippi 39095
Telephone: (662) 834-2488
Fax: (662) 834-2628
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Case 2:20-cv-00086-TBM-MTP   Document 1   Filed 05/08/20   Page 20 of 20