**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

BIG TOMATO LLC d/b/a TABELLA,

      Plaintiff,

v.                                Case No. 20-CV-86-KS-MTP

STATE AUTO PROPERTY AND
CASUALTY INSURANCE CO.,

      Defendant.

**<u>STATE AUTO PROPERTY AND CASUALTY INSURANCE CO.'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
COMPLAINT</u>**

Michael O. Gwin (MSB #5086)
William F. Ray (MSB #4654)
Corey D. Hinshaw (MSB #101520)
**Watkins & Eager PLLC**
400 East Capitol Street
Jackson, Mississippi 39201
Phone: 601.965.1972
Fax: 601.965.1901
wray@watkinseager.com
mgwin@watkinseager.com
chinshaw@watkinseager.com

Adam H. Fleischer
Matthew P. Fortin
**BatesCarey LLP**
191 North Wacker, Suite 2400
Chicago, IL 60606
Phone: 312.762.3100
Fax: 312.762.3200
afleischer@batescarey.com
mfortin@batescarey.com
*Admitted pro hac vice*

# TABLE OF CONTENTS

I.  INTRODUCTION AND SUMMARY ...................................................................1

II. BACKGROUND FACTS ................................................................................4

    A.  The Complaint's Allegations of Economic Harm Caused by
        Government Health and Safety Orders ..................................................4

    B.  The State Auto Policy .................................................................................7

III. LEGAL STANDARDS ...............................................................................8

    A.  Motion to Dismiss for Failure to State a Claim ...................................8

    B.  Insurance Policy Interpretation ...............................................................9

IV. ARGUMENT .................................................................................................9

    A.  There is No Coverage Under Business Income Additional
        Coverage 5.f. [Count I at ¶ 71(d); Count II]. .......................................9

        1.  Purely economic harm is not "direct physical loss of
            property" at the premises. .......................................................10

        2.  There is no "direct physical damage to property" at the
            premises. .................................................................................11

        3.  There was no "necessary suspension" of Big Tomato's
            operations. ..............................................................................13

        4.  There is no causal link between the alleged "necessary
            suspension" and any physical loss of or damage to property
            at the premises.........................................................................14

        5.  The Policy, as a whole, does not cover losses from
            government regulations in the absence of property loss or
            damage. ...................................................................................15

    B.  There is No Coverage Under the Civil Authority Additional
        Coverage 5.i. [Count I at ¶ 71(c); Count II].........................................17

        1.  The civil authority actions were not "due to" direct physical
            loss of or damage to property....................................................17

        2.  There was no "prohibition of access" to the described
            premises ..................................................................................18

C.     There is no coverage under the Extra Expense Additional
       Coverage 5.g. [Count I at ¶ 71(d); Count II]..........................................................20

V.    CONCLUSION............................................................................................................20

**STATE AUTO PROPERTY AND CASUALTY INSURANCE CO.'S**
**MEMORANDUM IN SUPPORT OF MOTION**
**TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant, State Auto Property and Casualty Insurance Co. ("State Auto"), submits its Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**I.      INTRODUCTION AND SUMMARY**

The contagiousness of COVID-19 caused international health organizations to promulgate worldwide guidelines to restrict interactions between people. Countries followed with interpersonal restrictions, as did states and municipalities, all aimed at containing a global health crisis.  None of the government actions were due in any way to alleged physical loss of or damage to property at any particular address. In other words, even the most scientifically sanitized of restaurants would have been subject to the same governmental orders as a neighboring restaurant which had perhaps unknowingly hosted customers infected with COVID-19.  <u>The restrictions were simply not caused by any property damage, and of course did not cause direct physical loss of or direct physical damage to property.</u>

By contrast, the "business interruption" insurance that Big Tomato seeks is an aspect of property insurance that fundamentally requires direct physical loss of or direct physical damage to property at, or in the immediate vicinity, of a specific insured location. The policy State Auto issued to Big Tomato ("the Policy") is no exception. The Policy's coverage is wholly dependent upon direct physical loss of or damage to property in or around the specific insured premises of a restaurant operated by Big Tomato, d/b/a Tabella in Hattiesburg, Mississippi.

Big Tomato asks this Court to declare that State Auto is obligated to compensate it for the loss of income the restaurant sustained pursuant to three distinct coverages in the Policy: 1) Additional Coverages, 5.f., "Business Income"; 2) 5.g., "Extra Expense," and; 3) 5.i., "Civil

Authority." (*See* Compl. ¶¶ 26-30). Not one of those coverages, nor any other in the Policy, insure the economic repercussions of state-wide public health proclamations that are entirely unrelated to any property conditions at the insured premises. In fact, the policy provisions at issue in this case demonstrate that Big Tomato has not pled the prerequisites to a covered business interruption claim, and that the public health orders at issue cannot, as a matter of law, create such a covered claim.  For example:

1.      **Business Income Coverage [Compl. ¶28]** pays for the actual loss of business income the insured sustains due to the necessary suspension of its "operations" during the "period of restoration." However, the necessary suspension of operations must be **caused by direct physical** loss of, or direct physical damage to, property at the insured's premises. (Ex. A at SA000064). Here, the policyholder's operations were not suspended, and in fact the policyholder adhered to the government encouragement to remain open.  Furthermore, there is no direct physical loss of or damage to property at the premises that is alleged *to have caused any suspension* as the Policy requires. Instead, the Complaint pleads the opposite; that it was the government-ordered restriction of operations that is alleged to have caused the losses. (Compl. ¶¶4, 6). The Complaint does not plead the requisite direct physical loss of or damage to property at the insured premises, and cannot establish such loss or damage as a matter of law.

2.      **Civil Authority Coverage [Compl. ¶29]** pays for the actual loss of business income the insured sustains caused by action of civil authority that prohibits all access to the insured's premises <u>due to direct physical loss of, or direct physical damage to, property</u> other than at the insured's premises. (Ex. A at SA000066) In other words, this coverage only applies if <u>direct physical loss or damage</u> to property caused a civil authority to <u>prohibit all access</u> to the insured premises.  Here, the civil authority orders pled by Big Tomato explicitly state that they

were issued to regulate interpersonal contact, and <u>not</u> in response to property damage at any particular premises.  Furthermore, the civil authority orders did not "prohibit access" to the property, but specifically allowed access to the property.  The elements of Civil Authority coverage have not been pled and cannot be satisfied as a matter of law.

Big Tomato's "Factual Allegations" (Compl. ¶¶31-41) contain no mention whatsoever of "direct physical" virus contamination on any property at any insured location.  Instead, this case rests upon the <u>conclusory legal pleading</u> that a virus generally circulating across the state, the country, or the world—and continuing indefinitely into the foreseeable future— "is physically impacting private commercial property." (*Id.* at ¶42). But the coverages at issue are not triggered by broad legal conclusions of "physical impact" in the commercial world; but rather by direct facts of physical loss of, or direct physical damage to, property at an insured location.  The law squarely rejects any contention otherwise, and no amount of litigation or discovery can change this.  This case presents a purely legal issue, already addressed by controlling law, which is exactly the purpose of a Court's gate-keeping obligations under Rule 12(b)(6).

The global economic and health suffering from COVID-19 has ravaged all communities and businesses.  However, the path of economic devastation wrought by this pandemic <u>does not permit</u> the rewriting of State Auto's insurance contracts to make them into a societal funding mechanism, which the terms themselves indicate is not the intent.  The claim by Big Tomato simply does not, on its face, fall within the terms of the Policy, and State Auto is entitled to dismissal of the complaint with prejudice, as a matter of law.

## II.   BACKGROUND FACTS

### A.   The Complaint's Allegations of Economic Harm Caused by Government Health and Safety Orders

The Complaint sets forth the background history of COVID-19 being declared a worldwide epidemic on March 11, 2020 (Compl. ¶18), followed by civil authorities issuing restrictions on interpersonal contact, all in an effort to contain the virus. (*Id.* at ¶21) Three specific orders are alleged in the Complaint: (1) Executive Order No. 2020-1, dated March 17, 2020, issued by Toby Barker, Mayor of the City of Hattiesburg; (2) Executive Order No. 2020-2, dated March 21, 2020, also issued by Mayor Barker; and (3) Executive Order No. 1463, dated March 24, 2020, issued by Tate Reeves, Governor of Mississippi.[1] Each of these orders allowed, and even encouraged, restaurants to continue operating, albeit while restricting their services. (Compl. at ¶¶35-36; Exs. B, C, D).

The focus of the Complaint is the impact these orders had on the insured restaurant at issue: Big Tomato d/b/a Tabella on Hardy Street in Hattiesburg. (*Id.* at ¶¶13, 32). The Complaint does not allege specific physical loss of or damage to property at the Hardy Street insured location.   The Complaint does not allege that the orders at issue were caused by or were the result of actual or alleged injury, disease, physical loss or damage at the insured premises or at any particular premises.

Instead, the Complaint alleges a specific chain of causation whereby the alleged governmental "suspension" of Big Tomato's operations caused the "loss and damage," not that

---

[1] These orders are attached as Exhibits B, C, and D, respectively. Because they are referred to in Big Tomato's Complaint, *see* Compl. ¶¶ 35-36, and are central to its claims, the orders are considered part of the pleadings and may be considered by the Court in ruling on State Auto's Motion to Dismiss. *See Big Time Vapes, Inc. v. Food & Drug Admin.*, 427 F. Supp. 3d 831, 836 (S.D. Miss. 2019) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.") (quotation omitted).

the "loss and damage" caused the "suspension," as the Policy requires. For instance, Big Tomato alleges that the "response by civil authorities to stop the spread of the outbreak . . . has caused physical property loss and damage to the insured property." (Compl. at ¶6). In the same paragraph, Big Tomato refers to "physical loss and damage to the insured property from measures put in place by the civil authorities to stop the spread of COVID-19 among the population. (*Id.*). Elsewhere, Big Tomato alleges that "[a]s a direct result of the[se] government orders and the COVID-19 pandemic, [it] has been forced to close its premises, suspend business operations, and furlough employees." (*Id.* at ¶39).

These allegations, however, are in stark contrast to the executive orders, each of which allowed and encouraged restaurants to continue operating, while only restricting their services. (*Id.* at ¶¶35-36; Exs. B, C, D); *Smit v. SXSW Holdings, Inc.*, 903 F.3d 522, 528 (5th Cir. 2018) (When an allegation in a complaint is contradicted by facts in an exhibit, then the exhibit and not the allegation controls.).

The March 17, 2020, order from the Mayor of Hattiesburg (Ex. B), provides, in relevant part, that, "in an effort to slow the spread of Covid-19", beginning on March 18, 2020 through March 31, 2020, full-service restaurants would be permitted to stay open only for delivery or pick-up. The order stated:

> [I]n an effort to slow the spread of Covid-19 and to make common sense policy and operational decisions to that end, [I] hereby issue the following guidelines for bars, nightclubs, restaurants, coffee shops, event venues and fitness centers in the City of Hattiesburg [which] will be implemented beginning tomorrow, March 18, 2020, and will be enforced until March 31, 2020.
>
> • All full-service restaurants with indoor seating will cease operations at 9 p.m. daily. Once the dining room closes, a restaurant may still offer delivery or pick-up and to go orders.

- Full-service restaurants and coffee shops will reduce indoor seating capacity by half - or to 50, whichever is less. Restaurants must provide at least 6 feet of space between tables.

- Full-service restaurants and coffee shops will also reduce outdoor seating capacity by half – or to 50, whichever is less. Restaurants must provide at least 6 feet of space between tables.

(Ex. B)

The March 21, 2020, order from the Mayor of Hattiesburg (Ex. C) reiterated that restaurants would be permitted to stay open for take-out, pick-up, delivery, and drive-through services:

> [I]n an effort to slow the spread of Covid-19 and to make common sense policy and operational decisions to that end, [I] hereby issue the following guidelines for bars, nightclubs, restaurants, coffee shops, event venues and fitness centers in the City of Hattiesburg [which] will be implemented beginning tomorrow, March 22, 2020, and will be enforced until April 30, 2020.
>
> - All restaurants located in the City of Hattiesburg, with or without drive-in or drive-through services, may only provide take-out, pick-up, delivery, or drive-through services as allowed by law. There shall be no in-housing dining or available sitting areas for the public.

(Ex. C)

The March 24, 2020 order from the Governor of Mississippi (Ex. D) "highly encouraged" restaurants to stay open to provide drive-through, take-out, and delivery options.  The Order stated:

> From the date of this Executive Order until April 17, 2020, restaurants, bars, or other dining establishments shall suspend dine-in services unless able to reduce capacity to allow no more than 10 people to be gathered in a single space at the same time where individuals are in seated or otherwise in close proximity to each other.  However, the use of drive-thru, carryout, or delivery options is allowed and highly encouraged.

(Ex. D at p. 2)

### B.     The State Auto Policy

The Complaint pleads coverage under two of the "Additional Coverages."  In paragraph 28, the Complaint cites Additional Coverage 5.f., Business Income, and in paragraph 29 the Complaint cites Additional Coverage 5.i., Civil Authority. Since these provisions also reference Extra Expense coverage 5.g., State Auto also addresses that Additional Coverage.

The insuring agreement for Additional Coverage 5.f. is set forth below, with the relevant requirements in bold and italics added:

### f.   Business Income

### (1) Business Income

> We will pay for the actual loss of Business Income you sustain due to the ***necessary suspension*** of your "operations" during the "period of restoration."  The suspension ***must be caused*** by ***direct physical loss of or damage to property at the described premises.***  The loss or damage must be caused by or result from a Covered Cause of Loss.

(Ex. A at SA000064)  Covered Causes of Loss are defined as "Risks of Direct Physical Loss" unless the loss is excluded elsewhere in the policy.  (Ex. A at SA000062) The "period of restoration," pursuant to definition H.3., begins 72 hours after "the time of direct physical loss or damage," and ends when the damaged property "should be repaired, rebuilt or replaced." (Ex. A at SA000082) The definition states that the "period of restoration" will not include "any increased period due to the enforcement of any ordinance or law that (1) regulates the  . . . use . . . of any property." (Ex. A at SA000082)

Additional Coverage 5.i. applies where: 1) direct physical loss or damage to property causes 2) an action of civil authority, which 3) prohibits access to the described premises.  (Ex. A at SA000066) The provision specifically states (with bold and italics added to those relevant portions):

7

### i.   Civil Authority

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority ***that prohibits access to the described premises due to direct physical loss or damage*** to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

(Ex. A at SA000066)

The Complaint also makes a passing reference to the Policy's "extra expense coverage." *See* Complaint's prefatory paragraph and ¶71(d).  This Additional Coverage, 5.g., for Extra Expense applies where: 1) direct physical loss or damage to property takes place at the described premises, and 2) that loss or damage causes Extra Expense which would not have been otherwise necessary if the direct physical loss or damage had not taken place.  (Ex. A at SA000065-66) The provision specifically states (with bold and italics added to those relevant portions):

### g.   Extra Expense

(1) We will pay necessary Extra Expense you incur ***during the "period of restoration"*** that you would not have incurred if there had been no ***direct physical loss or damage to property*** at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

(Ex. A at SA000065)

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss for Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly¸* 550 U.S. 544, 570 (2007).  "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level."  *Bryant v. Thoratec Corp.*, 343 F. Supp. 3d 594, 600 (S.D. Miss. 2018).  While a court "must accept all well-pleaded facts as true", it need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Id.*

8

"When ruling on a motion to dismiss, a district court may [also] consider 'matters of which a court may take judicial notice.'" *Id.* (quoting *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)). "A court may take judicial notice of a fact 'that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned.'" *Id.* (citing Fed. R. Evid 201(b)). In this case, the governmental orders described in the Complaint fit that bill.

### B.       Insurance Policy Interpretation

Under Mississippi law, "an insurance policy is a contract subject to the general rules of contract interpretation." *ACS Const. Co., Inc. of Mississippi v. CGU*, 332 F.3d 885, 888 (5th Cir. 2003). It is well settled that "the object of contract interpretation is to ascertain the common intent of the parties." *Id.* "To do so, [the court] must construe the policy as a whole and review the language of the policy giving 'operative effect to every provision in order to reach a reasonable overall result.'" *Id.* (quoting *J&W Food Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550,552 (Miss. 1998)). "'[A] court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured.'" *Id. (*quoting *Titan Indem. Co. v. Estes*, 825 So. 2d 651, 656 (Miss. 2002)). "Under Mississippi law a plaintiff has the burden of proving a right to recover under the insurance policy sued on," and this basic burden never shifts from plaintiff. *Broussard v. State Farm Fire & Cas. Co.,* 523 F.3d 618, 625 (5th Cir. 2008).

## IV.    ARGUMENT

### A.       There is No Coverage Under Business Income Additional Coverage 5.f. [Count I at ¶ 71(d); Count II].

The Business Owners Special Property Coverage only applies when there is <u>direct physical</u> "loss of" or <u>direct physical</u> "damage to" "Covered Property at the premises described in

the Declarations," i.e. 3720 Hardy Street, in Hattiesburg, Mississippi. (Ex. A at SA000020, 61). Additional Coverage 5.f. (which is pled as a basis for declaratory judgment in Count I of the Complaint and for breach of contract in Count II), requires: 1) direct physical loss of property at the described premises, or 2) direct physical damage to property at the described premises, which 3) causes the necessary suspension of operations, 4) during the "period of restoration."  (*Id.* at SA000064). Multiple elements of the prerequisites to this coverage have not been pled, and cannot be satisfied, as discussed below.

<ol>
<li>**1. Purely economic harm is not "direct physical loss of property" at the premises.**</li>
</ol>

The Complaint asks this Court to find that "the COVID-19 pandemic and the corresponding response by civil authorities" has caused "physical loss" to the insured property. (Compl. ¶6). While no precise "physical loss" is pled at the insured address, the inference is that the "suspension of operations" caused economic loss, which constitutes a "direct physical loss of" property. (*Id.* at ¶30). However, the law of Mississippi rejects the notion that purely economic losses can constitute a "direct physical loss."

In *J.O. Emmerich & Associates, Inc. v. State Auto Insurance Companies*, 2007 WL 9775576 (S.D. Miss. Nov. 19, 2007), Hurricane Katrina caused *The Enterprise Journal* newspaper to lose electricity, thereby losing the use of its computers, thereby preventing publication of the paper and its advertisements. *Id.* at *1.  The issue before the court was whether the loss of access to advertisements on the computers is considered "direct physical loss of or damage to" to covered property.  *See id.*

The court first noted that the words "direct physical" modify both "loss of" and "damage to."  *Id.* at *3 (citation omitted).  In order to give meaning to the words "direct" and "physical," the court adopted the reasoning of a "clear majority of courts addressing this and similar issues"

in ruling that the economic repercussions of having the policyholder's property "unavailable until power was restored" does not constitute a "direct physical loss of or damage to" covered property. *Id.* at *4.

Other courts have agreed with *J.O. Emmerich* in holding that economic loss, unaccompanied by a distinct, demonstrable, physical alteration of property does not trigger business income coverage. *Hartford Ins. Co. v. Miss. Valley Gas Co.*, 181 Fed. App'x 465, 470 (5th Cir. 2006) ("absent some physical manifestation of loss or damage to the gas itself, the property insurance policies issued by Hartford in this case expressly exclude mere monetary losses from coverage"); *see also Roundabout Theatre Company v. Cont'l Cas. Co.*, 302 A.D.2d 1, 7-9 (N.Y. App. Div. 2002) (There was no "direct physical loss or damage"under an insurance policy where a theater company lost all access to its premises due to a municipal order that closed the street, but where the premises of the theater did not sustain any physical damage.)  In this case, the alleged loss of business income implicitly raised in the Complaint cannot satisfy the requirement of "direct physical loss of or damage to" covered property.

**2.    There is no "direct physical damage to property" at the premises.**

Big Tomato's alleged economic harm is not a "direct physical loss of" property, and Big Tomato has not pled any "direct physical damage to" any object, surface, equipment or specific property at the insured premises.  There is no physical damage pled that satisfies the Business Income requirements in 5.f. Even if Big Tomato could plead specific facts of a virus contamination found at the specific insured premises (which it has not), such pleadings, as a matter of law, still would not constitute "direct physical damage to property." As the Southern District of Mississippi explained, where there is no "physical alteration of the property," there is no "direct physical damage" to the property.  *J.O. Emmerich*, 2007 WL 9775576, at *4 (*citing* Couch On Ins. § 148:46 (3d ed. 2007) ("The requirement that the loss be 'physical,' given the

ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.")).

In another Mississippi decision, a policyholder who lost 80% of its business when a nearby bridge was ordered to be shut down then argued that the interruption of its business was "tantamount to direct physical loss to the insured location." *St. Paul Mercury Ins. Co. v. Magnolia Lady, Inc.*, 1999 WL 33537191 (N.D. Miss. Nov. 4, 1999).  The court disagreed, and held that if there is no actual physical loss or damage to the insured property, then there can be no business income coverage established.  *Id.* at *2.

Many courts have agreed that, without an actual alteration to the physical structure of covered property, there is no direct physical damage. *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 Fed. App'x 569, 575 (6th Cir. 2012) (applying Michigan law) (requirement of "direct physical loss or damage" not met where presence of bacteria in air conditioning system did not cause tangible damage to insured premises); *Columbiaknit, Inc. v. Affiliated FM Ins. Co.,* 1999 WL 619100, at *7 (D. Or. Aug. 4, 1999) (exposure of clothing to elevated spore counts was not "physical loss" in the absence of a "distinct and demonstrable physical change to the garment necessitating some remedial action"); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130, 1144 (Ohio Ct. App. 2008) (holding that mold does not constitute "physical damage" because "[t]he presence of surface mold did not alter or affect the structural integrity of the [property]"); *Ross v. Hartford Lloyd Ins. Co.*, 2019 WL 2929761, at *7 (N.D. Tex. July 4, 2019) ("'physical loss' under the Policy cannot fairly be construed to mean physical loss in the absence of physical damage.")

Here, Big Tomato has not pled any specific "direct physical loss of or damage to" the property at the insured premises, and therefore cannot establish coverage under 5.f.

### 3.     There was no "necessary suspension" of Big Tomato's operations.

Big Tomato is also unable to state a claim for relief under the Business Income Additional Coverage because it cannot allege a "necessary suspension" of its operations. Courts interpreting the phrase "necessary suspension" have overwhelmingly held that the term requires a complete cessation, even if temporary, as opposed to a mere slowing down of business before coverage is triggered. *See, e.g. Apartment Movers of Am., Inc. v. One Beacon Lloyds of Tex.*, 170 Fed. App'x 901 (5th Cir. 2006) (per curiam) (slowdown in insured's business was not a "necessary suspension" of its operations so as to trigger coverage for loss of business income); *Am. States Ins. Co. v. Creative Walking, Inc.*, 16 F. Supp. 2d 1062, 1065 (E.D. Mo. 1998) (holding that phrase "necessary suspension" in business income provision referred only to a total cessation of business activity); *Home Indem. Co. v. Hyplains Beef, L.C.*, 893 F. Supp. 987, 991-993 (D. Kan. 1995) (holding that the plain meaning of "necessary suspension" requires a "complete cessation" of business operations); *Forestview The Beautiful, Inc. v. All Nation Ins. Co.*, 704 N.W.2d 773, 775 (Minn. App. 2005) (holding that "necessary suspension of operations" meant complete cessation of business); *Buxbaum v. Aetna Life & Cas. Co.*, 126 Cal. Rptr. 2d 682, 687-94 (Cal. Ct. App. 2002) ("the common understanding of the term 'suspension' … connotes a temporary, but complete, cessation of activity."); *Broad St., LLC v. Gulf Ins. Co.*, 37 A.D. 3d 126, 131-32 (N.Y. App. Div. 2006).

Here, each of the civil authority orders Big Tomato relies on explicitly permits, and even encourages, restaurants to remain open for take-out, pick-up, drive-through, and delivery. (*See* Exs. B, C, D). Notwithstanding Big Tomato's allegation that, as a result of these orders, it "has been forced to close its premises, suspend business operations, and furlough employees," *see*

Compl. ¶ 39, the terms of the orders themselves control over contradictory allegations in the complaint. *See Smit*, 903 F.3d at 528. In fact, Big Tomato's own characterization of those orders implicitly acknowledge that it did not suspend its operations. (*Id.* at ¶¶ 35-36) (noting that executive orders "restrict[ed] operating times," "clos[ed] all dine-in services," and "further restrict[ed] operations…by suspending all dine-in services."). Because these orders did not require complete cessation of Big Tomato's operations, it cannot allege the "necessary suspension" of operations required for Business Income coverage.

4.      **There is no causal link between the alleged "necessary suspension" and any physical loss of or damage to property at the premises.**

Even if Big Tomato *could* establish a "suspension" of its operations, the Business Income coverage under 5.f. requires a particular causal chain, which Big Tomato is still unable to satisfy. The Policy requires direct physical loss of or damage to property at the insured premises, *which then causes* a necessary suspension of operations. (Ex. A at SA000064).

Another federal court examining this issue recently concluded that losses due to COVID-19 governmental restrictions were not "caused by" any direct physical loss or damage. In *Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, Cause No. 1:20-cv-03311-VEC (May 14, 2020 S.D.N.Y.), the court denied a motion for preliminary injunction.   *See* Transcript of Teleconference Hearing on Order to Show Cause, Exhibit E.  The court explained that "what has caused the damage is that the governor has said you need to stay home.  It is not that there is any particular damage to your specific property." (Ex. E at 8:16-18).  "The virus is not specifically in your property that is causing damage.  It is everywhere." (*Id.* at 7:22-24).   The court concluded:

> I feel bad for your client.  I feel bad for every small business that is having difficulties during this period of time.  But New York law is clear that this kind of business interruption needs some damage to the property to prohibit you from going. . . . this (pandemic) is just not what's covered under these insurance policies.

(*Id.* at 15:10-16)

Big Tomato does not plead any damage to property that caused it to suspend operations, but in fact *pleads the opposite*. Big Tomato pleads that the measures put in place to curtail business operations are what caused physical loss and damage to the insured property. The Complaint alleges that expenses have been "incurred by policyholders for physical loss and damage to the insured property *from measures put in place by civil authorities.*" (Compl. ¶¶4, 6, Emphasis added) "[T]he corresponding response by civil authorities to stop the spread of the outbreak . . . *has caused physical property loss and damage.*" *Id.* (Emphasis added.) Plaintiff builds its commonality with other policyholders on the same inverse pleading that the suspension orders put in place by civil authorities "caused physical loss or damage to covered commercial property." (Compl. ¶64(d)).

The Complaint cannot establish that there existed "direct physical loss of or damage to property" <u>which then caused</u> a suspension of operations at the insured address, because the Complaint pleads that it was the suspension of operations that caused the direct physical damage to the insured property. Even then, no specific direct physical damage is pled to any property at the insured premises.

### 5.   The Policy, as a whole, does not cover losses from government regulations in the absence of property loss or damage.

Insurance policies are interpreted using the general principles of contract law. *ACS Const. Co., Inc. of Miss*., 332 F.3d at 888. Courts must construe policy language according to its plain and ordinary sense, so as to effectuate the intent of the parties as it appears from the contract. *See McFarland v. Utica Fire Ins. Co. of Oneida County, N.Y.*, 814 F. Supp. 518, 525 (S.D. Miss. 1992) ("[U]nder Mississippi jurisprudence words, terms, phrases, and clauses in insurance contracts are to be given their everyday meanings, not hypertechnical or esoteric

definitions, but their plain and common meaning."). In doing so, "this Court should look at the policy as a whole, consider all relevant portions together and, whenever possible, give operative effect to every provision in order to reach a reasonable overall result." *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998). Where the relevant terms of the policy are unambiguous, "a court must refrain from altering or changing" those terms, "despite resulting hardship on the insured." *U.S. Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008).

When the Policy is read as a whole, it clearly demonstrates the intent <u>not to cover</u> the economic impact of government regulations which are unrelated to any physical loss of or damage to insured property. For example, the "Ordinance or Law" Exclusion B.1.a. bars coverage for loss or damage caused directly or indirectly by any of the following, regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

> **a. Ordinance Or Law**
>
> The enforcement of or compliance with any ordinance or law:
> (1) Regulating the construction, use or repair of any property[.]
> \*\*\*
> This exclusion, Ordinance Or Law, applies whether the loss results from:
>
> (1) An ordinance or law that is enforced even if the property has not been damaged[.]

(Ex. A at SA000069)

Under the above exclusion, when governmental officials impose certain restrictions on the "use" of property (as contrasted with "prohibiting access" as addressed in Civil Authority coverage in Section B below), that type of use restriction is not intended to be covered by State Auto, particularly in the absence of any property damage.

The reality that the insuring agreements do not cover business interruption in the absence of direct loss of or damage to property is also clarified in the Consequential Losses Exclusion, B.2.b. which clarifies the Policy intent by excluding coverage for loss or damage caused by "Delay, loss of use, or loss of market." (Ex. A at SA000071). This intent is also evidenced in the "period of restoration" definition which makes clear that the period is not to include any increased time "required due to the enforcement of any ordinance or law that (1) regulates . . . the use  . . . of any property." (Ex. A at SA000082).

The governmental efforts to control the spread of COVID-19 by restricting the operations of businesses and people worldwide were not efforts caused by or the result of any physical loss of or damage to any property, let alone to Big Tomato's insured property on Hardy Street. These type of health restrictions on use, in the absence of physical loss or damage, are not within the scope of coverage of the Policy, and should be dismissed as a matter of law.

**B.      There is No Coverage Under the Civil Authority Additional Coverage 5.i. [Count I at ¶ 71(c); Count II].**

The BusinessOwners Special Property Coverage Declarations provides Additional Coverage 5.i. for Civil Authority claims wherein: 1) direct physical loss or damage to property causes 2) an action of civil authority, which 3) prohibits access to the described premises. (Ex. A at SA000066). Big Tomato's pleading of Civil Authority coverage (Complaint ¶¶71, 73, 82) fails to plead that any civil authority action was the result of damage to property or that such an action prohibited all access to the insured premises—neither of which would be true here.

**1.      The civil authority actions were not "due to" direct physical loss of or damage to property.**

The Civil Authority coverage only applies when the action of the civil authority was "due to direct physical loss or damage to property, other than at the described premises." (Ex. A at SA000066) Here, Big Tomato properly acknowledges in its pleading that the civil authority

orders were <u>not issued due to physical loss or damage to property</u>, but were instead taken "to protect the health and safety of their residents" and "to stop the spread of COVID-19 among the population." (Compl. ¶¶3, 6).

In *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F. 3d 683, 686-87 (5th Cir. 2011), the Fifth Circuit Court of Appeals held, as a matter of law, that Civil Authority coverage was not available to a shuttered business when the mayor of New Orleans issued a mandatory evacuation order in response to an approaching hurricane. *Id.* at 686. Even though the hurricane had already damaged specific property in the Caribbean, the order was not issued <u>due to</u> that specific property damage, and thus the "causal link" between the damage and the civil authority action was missing. *Id.* at 686-87. Similarly, in *United Air Lines, Inc. v. Ins. Co. of Pa.*, 439 F.3d 128, 130 (2d Cir. 2006), the policyholder was not entitled to coverage when a civil authority halted flights due to the September 11 terrorist attacks. That closure was for preemptive prevention of terrorism, not the "result of" a dangerous condition of the physical damage to the nearby Pentagon, or the authority's need to access it. *See also The Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, 2004 WL 5704715, at *17 (N.D. Ga. Dec. 15, 2004) (civil authority coverage not available for closure following September 11 attacks because "an order . . . that is designed to prevent, protect against or avoid future damage is not a 'direct result' of already existing property loss or damage.").

## 2.   There was no "prohibition of access" to the described premises.

Civil Authority coverage does not apply where a governmental action <u>specifically allows</u> access to the insured premises. *See Dickie Brennan & Co.*, 636 F. 3d at 686-87 ("Civil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property."); *730 Bienville Partners. Ltd v. Assurance*

*Co. of Am.,* No. 02-31071. 67 Fed.Appx. 248, 2003 WL 21145725, at *2 (5th Cir. 2003) (interpreting "prohibit," as used in civil authority provision, to mean "to forbid by authority or command"). The Northern District of Mississippi agreed in *Magnolia Lady* that, where a government order caused an 80% decrease in business, but the policyholder was able to "continue operating business and accepting customers," then Civil Authority insurance coverage was not triggered because all access to the business was not prohibited. *Magnolia Lady*, 1999 WL 33537191, at *3.

The governmental orders pled by Big Tomato did not prohibit access to Tabella restaurant, but each actually encouraged the continued operations of the restaurant:

- The March 17, 2020, order from the Mayor of Hattiesburg (Ex. B), provided "a restaurant may still offer delivery or pick-up and to go orders."  It also allowed full-service restaurants and coffee shops to continue operations, but with a reduction in indoor seating capacity. (Ex. B).

- The March 21, 2020, order from Mayor Barker, again permitted Tabella to remain open, stating: "All restaurants located in the City of Hattiesburg, with or without drive-in or drive-through services, may only provide take-out, pick-up, delivery, or drive-through services as allowed by law." (Ex. C).

- The March 24, 2020, state-wide Executive Order 1463 (Ex. D), which "highly encouraged" restaurants to stay open, stated "the use of drive-thru, carryout, or delivery options is allowed and highly encouraged." (Ex. D at p. 2).

Not only did the civil orders allow Tabella to stay open but, to its credit, under very difficult circumstances, Tabella did so.

The Complaint does not plead that access to Tabella's insured premises was in fact completely prohibited or shut down by the government orders, because that is not the case. Therefore, Civil Authority coverage under Section 5.i. cannot be met as a matter of law.

**C.      There is no coverage under the Extra Expense Additional Coverage 5.g.
[Count I at ¶ 71(d); Count II].**

The Business Owners Special Property Coverage Declarations provides Additional
Coverage 5.g. for Extra Expense wherein: 1) direct physical loss or damage to property takes
place at the described premises, and 2) that loss or damage causes Extra Expense which would
not have been otherwise necessary if the direct physical loss or damage had not taken place.  (Ex.
A at SA000065)  As previously discussed, Big Tomato has not alleged actual "direct physical
loss or  damage to" any particular property at the insured premises.  Furthermore, applicable law
dictates that the economic repercussions of a governmental use restriction <u>do not constitute</u>
"direct physical loss" or "direct physical damage" as a matter of law.

## V.      CONCLUSION

The Business Income coverage pled in the Complaint at ¶71(d) requires that Big Tomato
offer facts to establish "direct physical loss of or damage to property" at the insured premises,
which then caused the necessary suspension of operations.   Similarly, the Extra Expense
coverage pled in Complaint at ¶71(d) requires Big Tomato to plead facts demonstrating a "direct
physical loss or damage to property at the described premises."   Here, Big Tomato pleads no
facts to establish a direct physical loss or direct physical damage to any particular insured
property—which then caused a suspension of operations.   Instead the Big Tomato Complaint is
premised upon the opposite approach; pleading that the suspension of its operations then caused
certain economic losses.   As a matter of law, this "inverse causal connection" does not and
cannot create Business Income coverage.

The Civil Authority coverage pled in the Complaint requires Big Tomato to present facts
to establish that "direct physical loss or damage to property took place," which then caused an
action by a civil authority, which "prohibits access to the described premises."  Here, the civil

authority actions specifically encouraged Big Tomato <u>to continue</u> to access and operate its restaurant, which Big Tomato did.  Big Tomato cannot plead or prove a civil authority order that prohibited access to its premises or that was caused by direct physical loss or damage to property.

WHEREFORE, Defendant, State Auto Property and Casualty Insurance Co., respectfully requests that this Court dismiss the Plaintiff's Complaint without leave to replead and grant State Auto any other and further relief deemed just and appropriate.

Respectfully submitted, this the 30th day of June, 2020.

STATE AUTO PROPERTY AND
CASUALTY INSURANCE CO.


By:      /s/ Michael O. Gwin
MICHAEL O. GWIN

OF COUNSEL:

MICHAEL O. GWIN (MSB #5086)
WILLIAM F. RAY (MSB #4654)
COREY D. HINSHAW (MSB # 101520)
WATKINS & EAGER PLLC
400 E. Capitol Street
Post Office Box 650
Jackson, MS  39205
Tel:  601-965-1900
Fax  601-965-1901
mgwin@watkinseager.com
wray@watkinseager.com
chinshaw@watkinseager.com

ADAM H. FLEISCHER
MATTHEW P. FORTIN
BATESCAREY LLP
191 N. Wacker, Suite 2400
Chicago, IL  60606
Tel:  312-762-3130
afleischer@batescarey.com
mfortin@batescarey.com
*Admitted pro hac vice*

22

## <u>CERTIFICATE OF SERVICE</u>

I, Michael O. Gwin, do hereby certify that I have this date caused a true and correct copy of the above and foregoing document to be filed using the ECF filing system, which electronically forwarded a copy of the same to the following:

> John "Don" Barrett
> David McMullan, Jr.
> Barrett Law Group, P.A.
> 4040 Court Square
> Lexington, MS  39095
> dbarrett@barrettlawgroup.com
> dmcmullan@barrettlawgroup.com

This the 30th day of June, 2020.

> /s/ Michael O. Gwin
> MICHAEL O. GWIN