## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**BIG TOMATO LLC** *d.b.a.* **TABELLA**                                               **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO. 2:20-cv-86-TBM-MTP**

**STATE AUTO PROPERTY AND**
**CASUALTY INSURANCE CO.**                                                **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

The COVID-19 pandemic and government shutdowns caused many businesses—like Big Tomato LLC—to lose money. In an attempt to recoup some losses, Big Tomato sued its insurance company, State Auto Property and Casualty Insurance. It alleged coverage under a commercial property insurance policy that carried business income and extra expense provisions. But State Auto avers that Big Tomato's government-shut-down claim for lost business income is not actually covered under the policy. Accordingly, it has moved to dismiss Big Tomato's suit. This Court agrees with State Auto. The Motion to Dismiss [38] is granted.

### I. BACKGROUND AND PROCEDURAL HISTORY

Big Tomato operates an Italian restaurant in Hattiesburg, Mississippi. The restaurant is insured by a commercial property insurance policy issued by State Auto. [28], pp. 4, 9-10.

The insurance policy is an "all risk" policy which includes coverage for business income and extra expenses. It covers business income lost "due to the necessary suspension of . . . 'operations' . . . .The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss." [38-1], p. 65. Also covered under the policy are extra expenses that Big Tomato incurred "during the 'period of restoration'" that Big Tomato "would not have incurred if there

had been no direct physical loss or damage at the described premises." [38-1], p. 66. What is more, the policy carries a food-borne illness endorsement that extends coverage for the "Suspension of [Big Tomato's] 'operations' at the described premises due to the order of a civil authority . . . resulting from the actual or alleged . . . [e]xposure of the described premises to a contagious or infectious disease." [38-1], p. 117.

In March of 2020, Hattiesburg's Mayor and Mississippi's Governor issued orders restricting restaurants from offering dine-in services. [38-2], [38-3], [38-4]. Big Tomato complied with the orders and suspended its dine-in service. This pause negatively impacted Big Tomato's income.

Big Tomato initially filed a class action suit against State Auto in this Court seeking a declaratory judgment that its income loss is covered under the business income and extra expense provisions. [27], p. 1.[1] Big Tomato then sought leave to amend its complaint to include an assertion that coverage applied under the food-borne illness endorsement as well. [27], p. 2. The Magistrate Judge allowed that amendment. [27], p. 3.

In addition to seeking a declaratory judgment of coverage, Big Tomato also seeks damages based on State Auto's anticipatory breach of contract. [28], p. 18. As noted above, State Auto has moved to dismiss Big Tomato's complaint. It asserts that Big Tomato has failed to state a claim for coverage because Big Tomato has not alleged any direct physical loss or damage to its property. [39]. This Court now reviews that motion.

---

[1] Big Tomato also asserted coverage under the "Civil Authority" provision. It has since abandoned that claim. [41], p. 25.

2

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ferrer & Poirot, GP v. Cincinnati Ins. Co.*, 36 F.4th 656, 658 (5th Cir. 2022) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A "court accepts the 'well-pleaded facts as true,' and views 'them in the light most favorable to the plaintiff.'" *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 454 (5th Cir. 2022) (quoting *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007)).

## III. ANALYSIS

This is a diversity case, so this Court applies the substantive law of the forum, here Mississippi. *See Hyde v. Hoffmann-La Roche, Inc.*, 511 F.3d 506, 510 (5th Cir. 2007). "But the [Mississippi] Supreme Court has not interpreted the policy language at issue or whether the relevant provisions cover business interruption losses . . . during the COVID-19 pandemic." *Terry Black's Barbecue*, 22 F.4th at 454. Accordingly, this Court has to make an *Erie* guess at what the Mississippi Supreme Court would do in this case. *See Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

This requires relying on (1) Mississippi Supreme Court decisions "in analogous cases" along with (2) the reasoning of Mississippi Supreme Court decisions on related issues, (3) Mississippi Supreme Court dicta, (4) decisions of other Mississippi state courts, (5) "the general rule on the question," (6) decisions of other courts that the Mississippi Supreme Court looks to when rendering its decisions, and (7) treatises or legal commentaries. *Gulf & Miss. River*

*Transp. Co., Ltd. v. BP Oil Pipeline Co.*, 730 F.3d 484, 488-89 (5th Cir. 2013) (quoting *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, L.L.C.*, 620 F.3d 558, 564 (5th Cir. 2010)).

**A. Big Tomato's Claim for a Declaratory Judgment of Coverage**

"In Mississippi, the interpretation of an insurance policy is a question of law." *Barden Miss. Gaming LLC d/b/a Fitzgerald's Casino v. Great N. Ins. Co.*, 576 F.3d 235, 238 (5th Cir. 2009) (citing *Progressive Gulf Ins. Co. v. Dickerson & Bowen, Inc.*, 965 So. 2d 1050, 1054 (Miss. 2007)). Analyzing a policy requires that courts "effect a determination of the meaning of the language used, not the ascertainment of some possible but unexpressed intent of the parties." *Minn. Life Ins. Co. v. Columbia Cas. Co.*, 164 So. 3d 954, 968 (Miss. 2014) (quoting *Cherry v. Anthony, Gibbs, Sage*, 501 So. 2d 416, 419 (Miss. 1987)).

Thus it is a court's role "to render a fair reading and interpretation of the policy by examining its express language and applying the 'ordinary and popular meaning' to any undefined terms." *Corban v. United Servs. Auto Ass'n*, 20 So. 3d 601, 609 (Miss. 2009) (quoting *Noxubee Cnty. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1165 (Miss. 2004)). "The Mississippi Supreme Court 'resort[s] to such compendia of knowledge as dictionaries, often the Merriam-Webster Dictionary, to determine these common and ordinary meanings.'" *Jordan v. Evanston*, 23 F.4th 555, 561 (5th Cir. 2022) (quoting *Taylor Constr. Co., Inc. v. Superior Mat Co., Inc.*, 298 So. 3d 956, 959 (Miss. 2020)).

**1. The Business Income and Extra Expense Provisions**

The insurance policy requires Big Tomato to demonstrate a direct physical loss or damage in order to establish coverage. But the phrase "direct physical loss or damage" is not defined in

4

the policy, so this Court will apply the factors laid out by the Fifth Circuit to guess how the Mississippi Supreme Court would determine the meaning of "direct physical loss or damage."

This Court begins with Mississippi precedent. Despite deciding several cases touching on "direct physical loss," neither the Mississippi Supreme Court nor the Mississippi Court of Appeals have *fully* defined the term in the insurance context, particularly the crucial adjective "physical." *See Corban v. United Servs. Auto Ass'n*, 20 So. 3d 601, 609-14; *Hoover v. United Servs. Auto. Ass'n*, 125 So. 3d 636, 640-43 (Miss. 2013); *Robichaux v. Nationwide Mut. Fire Ins. Co.*, 81 So. 3d 1030, 1039-40 (Miss. 2011). Generally, in those cases, the parties did not dispute the physical nature of the damage or loss. But, the Mississippi Supreme Court has noted that in the insurance context "loss" is distinct from "damage": "[a] 'loss' is incurred by an insured and typically, but not always, follows 'damage' to his or her property." *Corban*, 20 So. 3d at 612. Further, it has stated that "'loss' has been defined as '1. An act or instance of losing. 2. One that is lost. 3. Injury or suffering caused by losing or by being lost.'" *Id.* Synthesizing these, the Mississippi Supreme Court found that one suffers loss to commercially insured property "when the insured suffers deprivation of, physical damage to, or destruction of the property insured." *Id.* at 613.

Turning now to the reasoning undergirding similar opinions, this Court now looks to dictionaries for the ordinary and popular meaning of the remaining terms. Direct is defined as "marked by an absence of an intervening agency, instrumentality, or influence," *Direct*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2009), and as "free from extraneous influence; immediate," *Direct*, BLACK'S LAW DICTIONARY (11th ed. 2019). Physical is in turn defined as "having material existence: perceptible . . . of or relating to material things," *Physical*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2009), and as "[o]f, relating to, or involving

5

material things; retaining to real, tangible objects," *Physical*, BLACK'S LAW DICTIONARY (11th ed. 2019). Damage for its part means "harm resulting from injury to person, property, or reputation," *Damage*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2009), or "injury to person or property; esp., physical harm that is done to something or to part of someone's body," *Damage*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Taking these definitions together, this Court finds that, under Mississippi Supreme Court precedent, the meaning of "direct physical loss or damage" to property is immediate, tangible deprivation of, physical damage to, or destruction of property.

Big Tomato draws on the Mississippi Supreme Court's use of "deprivation" in *Corban* to assert that it was deprived of its property because it was not able to use it how it wanted to, *i.e.*, by offering dine-in services. That argument, while gainfully addressing "loss" as "deprivation," fails to grapple with the full policy language. Clearly there is precedent for loss of use equating to a taking of property. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992). But Big Tomato did not bargain for insurance covering a partial loss of use of its property; rather it bargained for coverage of *physical* loss of its property.

Physical, as addressed above, means tangible or material. Big Tomato has not alleged that anything physically happened to its property, or that it was physically deprived of its property in some way. Instead, throughout its amended complaint and its briefing, Big Tomato trains all of its arguments on its inability to use its property a certain way. It essentially argues that it was deprived of a particular economic use of its property. But it does not address the physical, material, tangible status of the property. Perhaps, there are potential scenarios where Big Tomato could arguably be physically deprived of its property. For example, if the City of Hattiesburg or State of Mississippi

had seized restaurant locations or barred any person from the premises for any reason then—putting aside the more obvious constitutional issues and any other policy language that might apply to that situation—Big Tomato may have been able to demonstrate a physical loss. That is not this case though. The complaint only alleges that Big Tomato could not use its property for dine-in services. That is insufficient to allege an immediate tangible deprivation such that coverage applies.

This conclusion accords with the general rule on the question as well. Every federal appellate court has held that government-shutdown orders restricting the use of property do not give rise to physical damage or losses to the property.[2] Almost every state appellate court has held the same.[3] Of course, most important for this Court is what the Fifth Circuit says. This is true, even if the Fifth Circuit has not interpreted similar policy language under Mississippi law, because the Fifth Circuit has interpreted the meaning of "direct physical loss or damage" under Louisiana

---

[2] *See generally SAS Int'l, Ltd. v. Gen. Star Indem. Co.*, 36 F.4th 23 (1st Cir. 2022); *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 21 F.4th 216 (2d Cir. 2021); *Uncork and Create LLC v. Cincinnati Ins. Co.*, 27 F.4th 926 (4th Cir. 2022); *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450 (5th Cir. 2022); *Brown Jug, Inc. v. Cincinnati Ins. Co.*, 27 F.4th 398 (6th Cir. 2022); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327 (7th Cir. 2021); *Planet Sub Holdings, Inc. v. State Auto Prop. & Cas. Ins. Co., Inc.*, 36 F.4th 772 (8th Cir. 2022); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885 (9th Cir. 2021); *Goodwill Indus. of Cen. Okla., Inc. v. Phila. Indem. Ins. Co.*, 21 F.4th 704 (10th Cir. 2021); *Dukes Clothing, LLC v. Cincinnati Ins. Co.*, 35 F.4th 1322 (11th Cir. 2022).

[3] *See generally Inns-by-the-Sea v. Cal. Mut. Ins. Co.*, 286 Cal. Rptr. 3d 576 (Cal. Ct. App. 2021); *Commodore, Inc. v. Certain Underwriters at Lloyd's London*, 342 So.3d 697 (Fla. Dist. Ct. App. 2022); *ABW Dev., LLC v. Cont'l Cas. Co.*, No. 1-21-0930, 2022 WL 951388 (Ill. App. Ct. 2022); *Ind. Repertory Theatre v. Cincinnati Cas. Co.*, 180 N.E.3d 403 (Ind. Ct. App. 2022); *Wakonda Club v. Selective Ins. Co. of Am.*, 973 N.W.2d 545 (Iowa 2022); *GPL Enter., LLC v. Certain Underwriters at Lloyd's*, 276 A.3d 75 (Md. Ct. Spec. App. 2022); *Verveine Corp. v. Strathmore Ins. Co.*, 489 Mass. 534 (Mass. 2022); *AC Ocean Walk, LLC v. Am. Guar. & Liab. Ins. Co.*, No. A-1824-21, 2022 WL 2254864 (N.J. Super. Ct. App. Div. June 23, 2022); *Gavrilides Mgmt. Co., LLC v. Mich. Ins. Co.*, No. 354418, 2022 WL 301555 (Mich. Ct. App. 2022); *N. State Deli, LLC v. Cincinnati Ins. Co.*, 875 S.E.2d 590 (N.C. 2022); *Sanzo Enters., LLC v. Erie Ins. Exch.*, 182 N.E.3d 393 (Ohio Ct. App. 2021); *Cherokee Nation v. Lexington Ins. Co.*, No. 119,359, 2022 WL 4138429 (Okla. 2022); *Sullivan Mgmt., LLC v. Fireman's Fund Ins. Co.*, No. 2021-1209, 2022 WL 3221920 (S.C. 2022); *Hill and Stout, PLLC v. Mut. of Enumclaw Ins. Co.*, 515 P.3d 525 (Wash. 2022); *Colectivo Coffee Roasters, Inc. v. Soc'y Ins.*, 974 N.W.2d 442 (Wis. 2022); *but see Huntington Ingalls Indus., Inc. v. Ace Am. Ins. Co.*, No. 2022 WL 4396475 (Vt. 2022) (finding that a theory of direct physical damage was sufficiently alleged to survive judgment on the pleadings when the plaintiff alleged mucosal droplets of COVID-19 adhered to its shipyards and damaged them); *Cajun Conti LLC v. Certain Underwriters at Lloyd's*, No. 2021-CA-0343, 2022 WL 2154863 (La. App. Ct. 2022) (holding that "direct physical loss of or damage to" is an ambiguous term and thus finding coverage for damage as a result of contamination by COVID-19).

7

and Texas law in the same context as this case. *See Terry Black's Barbecue*, 22 F.4th 450; *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.,* 29 F.4th 252, (5th Cir. 2022); *Coleman E. Adler & Sons, L.L.C. v. Axis Surplus Ins. Co.*, 49 F.4th 894 (5th Cir. 2022).

These decisions are particularly persuasive for determining how the Mississippi Supreme Court would rule because both Texas and Louisiana apply interpretive standards identical to Mississippi's. *Terry Black's Barbecue*, 22 F.4th at 454-55 ("We begin with the language of the policy . . . . The words of the policy 'are given their ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense.'"); *Q Clothier New Orleans, L.L.C.*, 29 F.4th at 257 ("Courts must first consider the parties' intent by examining the words of the policy. . . . In so doing, 'words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning[.]'"); *Coleman E. Adler & Sons, L.L.C.*, 49 F.4th at 894 ("Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning.").

Similarly, in each case, the Fifth Circuit concluded that the plaintiffs needed to allege some tangible injury to or deprivation of the property. *See Terry Black's Barbecue*, 22 F.4th at 456 ("TBB has failed to allege any tangible alteration or deprivation of its property."); *Q Clothier*, 29 F.4th at 257 ("We conclude the Louisiana Supreme Court would interpret 'direct physical loss of or damage to property' to cover only tangible alterations of, injuries to, and deprivations of property."); *Coleman E. Adler & Sons*, 49 F.4th at 897 (adopting *Q Clothier*'s discussion).

In these cases the Fifth Circuit upheld denials of coverage because the plaintiffs failed to allege some tangible instance of loss or damage to its property resulted from a government-shutdown order. The *Terry Black's Barbecue* panel noted that this interpretation, while reasonable

8

on its face, also accorded with the broader insurance policy language. "The policy itself—as a commercial property policy. . . is tied to the commercial property that is insured. . . . The [Business Income and Extra Expense] provision[s] thus cover[] business interruption that is caused by loss or damage to the commercial property." *Terry Black's Barbecue*, 22 F.4th at 456.

Just as in *Terry Black's Barbecue*, *Q Clothier*, and *Coleman E. Adler & Sons*, "[n]othing physical or tangible happened to [Big Tomato's] restaurant[] at all. In fact, [Big Tomato] had . . . access to, and ability to use all physical parts of its restaurant[] at all times." *Id.* While Big Tomato alleges it was "forced to close [its] premises or substantially reduce [its] business," that amounts to at most an allegation of losing a property use, not of a physical loss of the property. And, again as the Fifth Circuit has already stated, "[a] 'physical loss of property' cannot mean something as broad as the 'loss of use of property for its intended purpose.'" *See id.* at 458. Reading that into the terms of the policy would defy, not interpret, the policy's plain and unambiguous terms.

Having examined the first five factors, as well as every appellate court the Mississippi Supreme Court could look to, this Court turns to the final *Erie* guess factor. But, as the relationship between government-shut-down orders and commercial property insurance is still relatively novel, no relevant treatises have sufficiently written on this topic. Regardless, given the sheer weight of the caselaw, this Court is confident in its *Erie* guess. Because Big Tomato has not stated any facts to support an allegation of physical loss or damage to its property, under Mississippi law it has failed to state a claim for coverage here.

9

### 2. The Food-Borne Illness Provision

For coverage to apply, this particular provision requires Big Tomato to face a forced suspension of its business operations "due to the order of a civil authority . . . resulting from the actual or alleged . . . [e]xposure of the described premises to a contagious or infections disease." [38-1], p.117. Again, there is no specific precedent from the Mississippi Supreme Court on this point. But, the Northern District of Mississippi recently interpreted substantially similar language from the same insurer. Following Mississippi's interpretative standards, the Northern District found that the language requires a causal relationship between the civil authority order and infections on the premises. The court stated that

> [r]ead together, the first two phrases establish suspension of operations at the described premises as an event that must occur to trigger coverage. However, the use and placement of the phrases "due to" and "resulting from" after the suspension language and the "order of [a] civil authority, adverse public communication, or media report" language plainly conditions the suspension of operations at the described premises on the occurrence of an order . . . . However, even where operations at the covered premises are suspended due to a civil order, that order must also "result from" an actual or alleged "[e]xposure of the described premises to a contagious or infectious disease." When used as a verb, "result" is defined as "to proceed or arise as a consequence, effect, or conclusion." The "resulting from" language therefore indicates the need for a causal link between an actual or alleged exposure of the premises and the order suspending operations at the premises[.]

*Danco LLC v. State Auto Prop. & Cas. Ins. Co.*, No. 3:20-cv-235-MPM, 2022 WL 1369064, *3 (N.D. Miss. May 3, 2022) (quoting *Univ. Mgmt, Inc. v. State Auto Prop. & Cas. Ins. Co.*, No. 1:20-cv-138-DMB, 2022 WL 805879, *4 (N.D. Miss. Mar. 15, 2022)).

This reasoning accords with the same appellate courts cited above and the Fifth Circuit's own analysis of nearly identical policy language. *See Terry Black's Barbecue*, 22 F.4th at 458 ("The key here is the requirement that the civil authority orders 'result from' [Big Tomato's] actual or

10

alleged exposure to a contagious disease."). This Court finds that under Mississippi law the plain and unambiguous meaning of "resulting from" is "causation," and Big Tomato "has failed to allege even a remote causal relationship between the civil authority orders and its restaurant['s] alleged or actual exposure to COVID-19." *Id.* Instead, Big Tomato alleges that the civil authority orders "restrict[ed] operating times for all restaurants within Hattiesburg," "clos[ed] all dine-in services at Hattiesburg restaurants," and "suspend[ed] all dine-in services" in Mississippi. Further, it avers that these actions were taken "to protect the health and safety of all residents by stopping the spread of the virus through human to human and surface to human contact." [28], pp. 9-10.

As the Fifth Circuit observed, and Big Tomato's own allegations prove, "from a common sense understanding of the onset of the pandemic, the civil authority orders were not caused, even tangentially, by [Big Tomato's] alleged or actual exposure to a contagious disease." *Terry Black's Barbecue*, 22 F.4th at 458. Instead, "[t]he civil authority orders 'resulted from' the global pandemic and the need to take measures to contain and prevent the spread of COVID-19. The language in the orders indicates that they were enacted to *avoid* exposure to COVID-19, not *because of* exposure to COVID-19." *Id.*

Because Big Tomato has not pled factual allegations supporting a causal link, Big Tomato has also failed to state a claim for coverage under this provision.

**B. Big Tomato's Breach of Contract Claim**

Big Tomato's anticipatory breach of contract claim was premised on the notion that the State Auto policy covered Big Tomato's losses, but that State Auto would refuse to provide

11

coverage. Because Big Tomato has failed to plead sufficient facts to plausibly establish coverage, its claim for anticipatory breach of contract also fails.

## IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that State Auto's Motion to Dismiss [38] is GRANTED and this case is DISMISSED WITH PREJUDICE.

THIS, the 22nd day of November, 2022.

TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE